UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RANDOLPH PRISCO,

                              Appellant,

         -against-                                    1:12-cv-0430 (LEK/DEP)

WELLS FARGO BANK, NA, *et al.*,

                              Appellees.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Before the Court is Appellant Rudolph Prisco's ("Appellant") Motion for reconsideration of

an Order dismissing an appeal for failure to prosecute. Dkt. Nos. 10; 14 ("Motion"). Appellant

subsequently amended his Motion. Dkt. No. 15 ("Amended Motion"). No responses or replies

were filed. For the reasons that follow, Appellant's Motion is denied.

## II.   BACKGROUND

Appellant filed a voluntary petition for Chapter 13 bankruptcy relief ("Petition") in the

Bankruptcy Court for the Northern District of New York. See Dkt. No. 1-1 ("Bankruptcy Court

Docket Sheet").[1] The Bankruptcy Court later converted Appellant's Petition to a Chapter 7 filing.

See Bankr. Ct. Dkt. No. 172. The filing of the Petition commenced the 11 U.S.C. § 362 automatic

stay. Appellee Wells Fargo Bank, NA ("Appellee") moved to lift the stay as to Appellant's home,

which he had refinanced with a mortgage ("Mortgage") obtained from Appellee. See Bankr. Ct.

Dkt. No. 43. The bankruptcy court issued a conditional order that lifted the stay ("Conditional

---

[1] From this point forward, citations to entries in the Bankruptcy Court Docket Sheet will be
cited as "Bankr. Ct. Dkt. No."

Order") to allow Appellant and Appellee to modify the Mortgage, and provided that the stay would

be unconditionally lifted if Appellant defaulted under the terms of the Conditional Order. Bankr.

Ct. Dkt. No. 62. Appellee subsequently filed an *ex parte* application to lift the stay after Appellant

allegedly defaulted on his payments. Bankr. Ct. Dkt. No. 200 ("Application"). The Court granted

the Application. Bankr. Ct. Dkt. No. 201. Appellant moved to reconsider the Bankruptcy Court

Order, Appellee filed a Response, and Appellant a Reply. Bankr. Ct. Dkt. Nos. 202; 206; 209.

After two hearings, the Bankruptcy Court ruled from the bench that Appellant's Motion to

reconsider was denied. Dkt. Nos. 7 ("November Transcript"), 7-1 ("December Transcript") at

40:11-12; see also Bankr. Ct. Dkt. No. 219. Appellant filed a notice of appeal, which is now before

the Court. Bankr. Ct. Dkt. No. 222.

   The Court set an initial due date of April 23, 2012 for Appellant's brief. See Dkt. No. 3

("Scheduling Order"). On April 20, Appellant moved for an extension of time to submit his brief.

Dkt. No. 5. The Court granted that Motion. Dkt. No. 6. On July 2, 2012, Appellant moved to

further extend time until July 16, 2012, stating that he was caring for his mother, who had recently

been a victim of cardiac arrest. Dkt. No. 8. The Court granted the requested extension. Dkt. No. 9.

On July 16, Appellant called the Court to explain that he could not timely file his brief because no

one is there to help Appellant's mother while he is away. The Court advised Appellant to file a

letter along with his brief at the earliest possible opportunity.

   Still having received no brief from Appellant as of June 2013, the Court dismissed the

appeal for failure to prosecute. Dkt. No. 10. Appellant then filed the Motions for reconsideration.

Mot.; Am. Mot.

**III.    DISCUSSION**

The standard for granting a motion for reconsideration is strict. <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Id.</u> Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998). "Generally, the prevailing rule in the Northern District 'recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" <u>Sumner v. McCall</u>, 103 F. Supp. 2d 555, 558 (N.D.N.Y. 2000) (Kahn, J.) (quoting <u>In re C-TC 9th Ave. P'ship</u>, 182 B.R. 1, 3 (N.D.N.Y. 1995)).

Federal courts possess the power to dismiss an action *sua sponte* for failure to prosecute. <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 629-31 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an inherent power . . . ."); <u>see also</u> FED. R. CIV. P. 41(b); L.R. 41.2 ("plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution"). In determining the validity of a Rule 41(b) dismissal, the Court looks to whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

<u>Lewis v. Rawson</u>, 564 F.3d 569, 576 (2d Cir. 2009); <u>see also</u> <u>United States ex rel. Drake v. Norden Sys., Inc.</u>, 375 F.3d 248, 254 (2d Cir. 2004) (noting that no single factor is dispositive in the

analysis). The Court is mindful of Appellant's *pro se* status. <u>See, e.g.</u>, <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101 (2d Cir. 2010). However, because more than twenty months have passed since the appeal was docketed, the Court denies Appellant's Motion.

Appellant urges the Court to reconsider the dismissal because Appellant is the "sole caregiver" of his mother and because Appellant attempted unsuccessfully to file a letter with the Court seeking further extension. Am. Mot. at 1. Appellant further contends that his appeal is meritorious. <u>Id.</u>

### A. <u>Lewis</u> Factors

Appellant's failure to prosecute the appeal caused a delay of significant duration—that delay is likely to continue even if the Motion is granted. An evaluation of the appeal on the merits cannot occur until Appellant files his initial brief, which determines the issues that the Court will consider. <u>See</u> <u>State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada</u>, 374 F.3d 158 (2d Cir. 2004). Plaintiff has not attached to his Motion or Amended Motion a brief that the Court could evaluate, nor has he provided any indication of when one might be filed.

Further delay in lifting the automatic stay as to the Mortgage is likely to prejudice parties with a possible interest in the mortgaged property, including Appellee. Appellant is tens of thousands of dollars in arrears on his mortgage payments for which interest holders have received no compensation. <u>See</u> Dec. Tr. at 30:17-18 ("[T]he total amount due [as of December 21, 2011 was] $69,160.93."). Appellant has not argued that he will be able to cure and, in light of the accumulation of two years of additional arrears, cure appears unlikely under the terms of the current Mortgage.

The Court does not find lesser sanctions to be appropriate, particularly because the refusal to

4

hear this appeal in no way affects Appellant's ability to challenge a potential foreclosure on the merits. Although the Court did not explicitly warn Appellant of an intent to dismiss the action, a reasonable *pro se* litigant would not expect that a delay of over a year would be permissible. Therefore, the Court's dismissal of this appeal for failure to prosecute was proper.

## B. Merits of the Appeal

The Court finds it to be unlikely that Appellant would succeed on the merits. Appellant's argues that the Fair Debt Collection Practices Act ("FDCPA") prohibits a "debt collector" from contesting a § 362 automatic stay. <u>See</u> Nov. Tr. at 10:6-11:18. The FDCPA defines a "debt collector" to be:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). There is an exception to this definition for "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." <u>Id.</u> § 1692a(6)(F)(iii). Although the Second Circuit has not yet ruled that this exception applies to loan servicers that service a loan prior to default, other circuits have ruled that it does, <u>see</u> <u>Brown v. Morris</u>, 243 Fed App'x 31, 34-35 (5th Cir. 2007), as have district courts in this Circuit, <u>see</u> <u>Pascal v. JPMorgan Chase Bank, Nat. Ass'n</u>, No. 09-cv-10082, 2013 WL 878588, at *4-5 (S.D.N.Y. March 11, 2013). Appellant, however, contends that the 2009 mortgage assignment from Appellee to U.S. Bank, <u>see</u> Am. Mot. at 5, demonstrates that Wells Fargo stepped into the shoes of the servicer only after it transferred its interest in the debt. Nov. Tr. at 10:6-17.

Thus, the question at issue on appeal is whether or not Wells Fargo had been acting as servicer prior to the default of the loan. This is a matter of fact, and thus the Court reviews the finding below for clear error. See United States v. Rubinstein, 403 F.3d 93, 99 (2d Cir. 2005). The Bankruptcy Court found that a pooling and servicing agreement ("PSA") existed between Wells Fargo and U.S. Bank. See Dec. Tr. at 38:8-11. Because the PSA is a public record, the Court can take judicial notice of its existence to examine its contents. See, e.g., In re UBS Auction Rate Secs. Litig., No. 08 Civ. 2967, 2010 WL 2541166, at *7 (S.D.N.Y. June 10, 2010). An examination of the PSA that Appellee claims contains Appellant's note, see Dkt. No. 2-2 at 1, reveals that Wells Fargo is defined as "Master Servicer," and has been since the execution of the PSA. See Securities and Exchange Commission EDGAR Online Database, available at http://sec.edgar-online.com/ mastr-asset-backed-securities-trust-2005-ab1/8-k-current-report-filing/2005/11/15/section6.aspx. Thus, even if the Court were to consider the merits of this appeal, it is unlikely that the Court would find the Bankruptcy Court's factual finding to be clearly erroneous.[2]

**IV.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Appellant's Motion (Dkt. No. 14) and Amended Motion (Dkt. No. 15) for reconsideration are **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

_____

[2]  In the state court foreclosure proceeding that will inevitably be filed, the complex laws that govern the obligations of holders of securitized mortgage loans may very well provide Appellant with valid defenses. However, the bar necessary to remove the automatic stay as to a loan that is in default is lower than to succeed on a foreclosure claim. Appellee has showed sufficient evidence to surpass that first hurdle.

**IT IS SO ORDERED**.

DATED:      December 30, 2013
               Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge